FILED

2011 Mar-03  PM 01:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **MEIHESHA ECHOLS o/b/o JOHN CHRISTOPHER McGLOTHAN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:09-CV-2147-RDP** |
| | } | |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Meihesha Echols ("Plaintiff") brings this action on behalf of her minor child, John Christopher McGlothan ("Claimant"), pursuant to § 1631(c)(3) of the Social Security Act (the "Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Claimant's application for Childhood Supplemental Security Income ("Childhood SSI") benefits under Title XVI.  *See* 42 U.S.C. § 1383(c).  For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

## I.  Proceedings Below

Plaintiff filed her application on behalf of Claimant for Childhood SSI on April 28, 2006, alleging disability beginning on November 18, 2005.  (Tr. 50, 68).  Plaintiff's application was denied by the Social Security Administration in its decision dated May 26, 2006.  (Tr. 52).  Plaintiff then requested a hearing before an administrative law judge ("ALJ").  (Tr. 57).  The ALJ conducted a hearing in Birmingham, Alabama on June 3, 2008.  (Tr. 20).  In his March 6, 2009 decision, the ALJ

determined that Claimant was not disabled within the meaning of the Act and thus was not eligible for Childhood SSI benefits. (Tr. 7-19). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.

At the time of the hearing, Claimant was four years old and attending daycare. (Tr. 22, 32). Because Claimant is a young child, he has not engaged in any substantial gainful activity at any time relevant to this decision. Claimant has asthma, a communication disorder, thalassemia, and a history of ear infections. (Tr. 120-62, 169-77). Claimant began having ear infections in February 2005, when he was between ten and eleven months of age. In November 2005, Claimant had tubes placed in his ears and an adenoidectomy was performed. (Tr. 118-19, 146-47). Claimant has also been treated for intermittent respiratory infections and a bug bite. (Tr. 121-22, 124-27).

Claimant was first diagnosed with asthma (or reactive airway disease) by his treating physician, Dr. Theresa Bolus. (Tr. 120-22). Claimant was prescribed Prednisone, Flovent, Albuterol, and Delsym. (Tr. 27). Plaintiff testified that Claimant has episodes that are triggered by being outside of the home, and that his chest feels tight two to three times each day. (Tr. 30). Plaintiff further testified that she was taking Claimant to the doctor's office or emergency room roughly every three to four months. (Tr. 28). After a visit to the emergency room in September 2007, Claimant was prescribed a home nebulizer. (Tr. 184). After this visit, Plaintiff testified that she has not had to take Claimant back to the emergency room or for an emergency office treatment. (Tr. 28).

Claimant has also been diagnosed with thalassemia. That condition was noted to be stable as of March 27, 2007. (Tr. 169). Claimant was seen by a consultative speech pathologist, Jerri Smith, on July 8, 2008. (Tr. 179). Ms. Smith's report states that Claimant has a moderate

2

communication disorder that is "characterized by delayed expressive and receptive language skills."

(Tr. 180). The report also states that with intervention, Claimant's prognosis for improvement is

good, and that articulation, voice, and fluency "appear to be within normal limits at this time." (*Id.*).

## II.  The ALJ Decision

In 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation

Act of 1996 (the "PRWORA"), which amended the statutory standard for determining Childhood

SSI. *See* P.L. No. 104-93, 110 Stat. 2105. The revised standard states:

> An individual under the age of 18 shall be considered disabled for the purposes of
> this subchapter if that individual has a medically determinable physical or mental
> impairment, which results in marked and severe functional limitations, and which can
> be expected to result in death or which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). On September 11, 2000, the Social Security Administration

published final rules thereby implementing the PRWORA. *See* 65 Fed. Reg. 5471. These rules

became effective on January 2, 2001. *See id.*

The rules establish a three-part test in determining a child's disability. First, the ALJ

determines whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(a).

Second, if the child is not engaged in substantial gainful activity, the ALJ determines whether the

child suffers from a severe impairment or combination of impairments. *Id*. An impairment or

combination of impairments is "severe" if it causes more than minimal functional limitations. 20

C.F.R. § 416.924(c). Finally, if the child suffers from a severe impairment or combination of

impairments, the ALJ determines whether the child's impairment or impairments meet, medically

equal, or functionally equal an impairment listed under Appendix I to Subpart P,  Part 404, of the

Listings of Impairments. 20 C.F.R. § 416.924(a).

Functional equivalence is dependent on the child's impairment or combination of impairments resulting in marked limitations in two broad categories of functioning or extreme limitation in one broad category of functioning.  20 C.F.R. § 416.926a(a).  The rules list six broad areas of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).  A child's impairment or combination of impairments functionally equal the listing if the child has "marked" limitation in two of these domains, or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(d).

The ALJ found that Claimant has not engaged in substantial gainful activity at any time relevant to the decision.  (Tr. 10).  Based upon the medical evidence presented, the ALJ concluded that Claimant has a communication disorder, asthma, and a history of ear infections and thalassemia, which constitutes a severe combination of impairments as defined by the Act.  (Tr. 10).  Nonetheless, the ALJ determined that Claimant's impairments (individually or in combination) do not meet, medically equal, or functionally equal the requirements for any impairment in the Listing of Impairments.  20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 10-11).

The ALJ considered but did not give any particular significance to the June 22, 2006 form responses from Dr. Bolus, Claimant's treating physician.  (Tr. 12). The ALJ did not give great weight to Dr. Bolus's medical opinion for the following reasons: (1) the questions on the form do not fully address the elements of the listing-level criteria; (2) the treatment records that accompanied the form do not support all of the responses on the form; (3) the form is dated shortly after Plaintiff's application date of April 28, 2006, and is coincident with the first treatment record from Dr. Bolus;

4

(4) the first medical diagnosis of asthma in the medical evidence was on April 26, 2006; and (5) the treatment records do not support the number of attacks reported by Dr. Bolus in the form, nor do the treatment records support the type of treatment necessary to meet listing-level severity.  (Tr. 12-13). In considering the state agency assessment completed by Dr. Bedsole on May 25, 2006, the ALJ recognized that her assessment did not address the additional treatment records and diagnosis of a communication disorder that was presented at the hearing level.  (Tr. 13).  The ALJ did, however, give significant weight to the opinions of the consultative speech pathologist because of her expertise, the recent timing and thoroughness of the evaluation, and the lack of controverting evidence in that area.  (Tr. 13).

Based on treatment records and Plaintiff's testimony, the ALJ found that Claimant does not experience "marked" limitations in two of the domains of functioning or "extreme" limitation in one or more domains of functioning.  (Tr. 13-19).  After considering all the evidence, the ALJ found that Claimant had a less than marked limitation in acquiring and using information, no limitation in attending and completing tasks, less than marked limitation in interacting and relating with others, no limitation in moving and manipulating objects, no limitation in caring for self, and a less than marked limitation in health and physical well-being.  (Tr. 13-19).  Thus, the ALJ ruled that Claimant is not disabled as that term is defined in the Act.  (Tr. 19).

### III.  Plaintiff's Argument for Remand

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, remanded with instruction. (Pl.'s Mem. 3).  Plaintiff argues that the ALJ failed to give proper weight to Dr. Bolus's treatment notes and asthma form.  (Pl.'s Mem. 2-3).  Plaintiff asserts that a "fair reading" of the treatment

notes and the asthma form provided by Dr. Bolus shows that Claimant meets the listing requirement for asthma.  (Pl.'s Mem. 2).  Plaintiff further argues that Claimant's impairments functionally equal the listings because his delayed expressive and receptive language skills put him "'at risk' socially and academically.'"  (Pl.'s Mem. 3).  Plaintiff asserts that this shows that Claimant has a "significant very well marked impairment" in acquiring and using information and interacting and relating to others.  (Pl.'s Mem. 3).

### IV.  Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citation omitted)).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Legal standards are reviewed *de novo*.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

"Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citation omitted)).  If supported by substantial evidence, the

Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## V. Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand. For the reasons outlined below, the court finds that the ALJ's decision was based on substantial evidence and the proper legal standards were applied.

**A.    The ALJ's Decision That Claimant's Asthma Was Not of Listing-level Severity Is Supported by Substantial Evidence and the Proper Legal Standards Were Applied.**

Plaintiff argues that Dr. Bolus's treatment notes and asthma form responses establish that Claimant meets the listing for asthma, and that the ALJ improperly rejected or improperly applied the evidence to the law. (Pl.'s Mem. 2-3). Plaintiff's argument fails for at least two reasons: (1) the ALJ's decision that the treatment notes do not indicate that Claimant's asthma meets the listing requirements was supported by substantial evidence; and (2) the ALJ clearly articulated "good cause" for not giving substantial weight to Dr. Bolus's answers on the asthma form. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

For a diagnosed impairment to meet a listing, a claimant must "provide medical reports documenting that the conditions meet the specific criteria of the listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)). Additionally, a claimant's impairment "must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The listing standard for asthma is as

follows:

103.03 Asthma. With:

A.      FEV1 equal to or less than the value specified in table I of 103.02A;

Or

B.      Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks;

Or

C.      Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:

1.      Persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease; or

2.      Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period;

Or

D.      Growth impairment as described under the criteria in 100.00.

20 C.F.R. Part 404, subpt. P, app.1, § 103.03.

In concluding the decision that Claimant's asthma did not meet the listing, the ALJ stated that the evidence did not show "the frequency and severity of attacks to meet listing-level criteria," and specifically found that the medical records showed only one attack that was "a prolonged symptomatic episode lasting one or more days and requiring intensive treatment such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a

8

hospital, emergency room or equivalent setting." (Tr. 10). The ALJ also reviewed Claimant's medical records and found that Claimant was examined about every two months, with no persistent wheezing noted. (*Id.*) The ALJ also found no pulmonary function testing, and that Claimant's low weight was attributed in the records to small parents, a feeding problem, and anemia (which was resolved prior to his application for disability). (Tr. 10-11). Because Claimant's treatment records do not show that his asthma meets all of the required criteria for the asthma listing, the ALJ's decision was supported by substantial evidence and is therefore due to be affirmed.

**B.   The ALJ Clearly Articulated Good Cause For Not Giving Substantial Weight To Dr. Bolus's Opinion.**

Plaintiff also contends that the ALJ erred in not giving proper weight to the asthma form responses provided by Dr. Bolus. (Pl.'s Mem. 2-3). A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis*, 125 F.3d at 1440. Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). The ALJ is required to "clearly articulate the reasons for giving less weight to the opinion of a treating physician." *Lewis*, 125 F.3d at 1440.

The ALJ clearly articulated his reasons for giving less weight to the asthma form responses provided by Dr. Bolus. The ALJ stated: (1) the form questions did not fully address the requirements to meet the listing for asthma; (2) the treatment records did not support the answers given by Dr. Bolus concerning the frequency of Claimant's attacks; (3) the treatment records did not show the type of treatment that is required to meet the listing for asthma; and (4) the date of the form was

shortly after the application date and was "coincident with the first treatment record" from Dr. Bolus. (Tr. 12-13). An examination of the ALJ's reasons for giving less weight to Dr. Bolus's opinion shows that this decision was supported by substantial evidence, and that the ALJ had good cause for giving less weight to Dr. Bolus's opinion.

On the asthma form, Dr. Bolus answered in the affirmative when questioned: "Does this condition result in attacks, despite prescribed treatment requiring physician intervention at least once every two months or six times a year?" (Tr. 183). This question is modeled after the listing criteria standard for asthma contained in subsection B of § 103.03, and thus, on a superficial level, it may appear that an affirmative answer to this question would constitute an opinion that Claimant's condition meets the listing. *See* 20 C.F.R. Part 404, subpt. P, app.1 § 103.03. However, as the ALJ noted in his decision, the question on the asthma form does not "completely address the full requirements for the elements of listing-level criteria." (Tr. 12, 183). Specifically, the form question does not include the definition of the word "attack" that is incorporated into the listing criteria. (Tr. 183). The word "attack" is defined in § 3.00C as:

> [P]rolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours.

20 C.F.R. Part 404, subpt. P, app.1, § 3.00C. Furthermore, as the ALJ stated, there is only one incident in Claimant's treatment records that qualifies as an "attack" under the listing definition. (Tr. 12, 184). Because neither the medical records nor Dr. Bolus's treatment notes support the frequency and severity of attacks necessary to meet a listing of asthma, the ALJ had good cause to discount Dr. Bolus's opinion that Claimant's condition resulted in "attacks" requiring physician intervention at least once every two months or six times a year.

10

**C.    The ALJ's Decision That Claimant's Impairments Do Not Functionally Equal The Listings Is Supported By Substantial Evidence**.

Plaintiff also contends that the report of the consultative speech pathologist, Jerri Smith, demonstrates that Claimant's impairments functionally equal the listings.   (Pl.'s Mem. 3). Specifically, Plaintiff asserts that Claimant has a marked impairment in his ability to acquire and use information and interact and relate to others because of his communication disorder.  (*Id.*) However, the ALJ's determination that Claimant has a less than marked limitation in acquiring and using information and interacting and relating to others was supported by substantial evidence because the ALJ considered both Plaintiff's testimony and the report of the consultative speech pathologist. (Tr. 14-16).

Ms. Smith's report stated that Claimant had a "moderate communication disorder," and that he was acquiring language skills at a delayed rate.  (Tr. 179-80).  Ms. Smith also stated that with intervention, Claimant's prognosis for improvement is good.  (Tr. 180).  This report is consistent with the ALJ's finding that Claimant has some limitation that could affect his ability to be understood when asking questions to acquire assistance.  But, contrary to Plaintiff's argument, a remand is not warranted.  Nor does this report provide evidence that Claimant has a marked impairment in interacting and relating to others.  Rather, the report notes that Claimant has normal articulation and fluency. (Tr. 180).  The ALJ also noted that Plaintiff testified that Claimant acts age appropriately with other children.  (Tr. 16, 35-36).  Thus, substantial evidence supports the ALJ's conclusion that Claimant does not experience marked limitations in two domains of functioning or severe limitation in one domain of functioning.

## VI.  Conclusion

The court concludes that the ALJ's determination that Claimant is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is, therefore, due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____3rd_____ day of March, 2011.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE